IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA              *

    v.                              *          Crim. No. JFM-94-174

IAN TRACEY                            *

                     * * * * *

## MEMORANDUM OF LAW IN SUPPORT OF RELIEF UNDER 18 U.S.C. § 3582

This Court has authority under 18 U.S.C. § 3582 to reduce the defendant's sentence below that recommended in U.S.S.G. § 1B1.10. While the Sentencing Commission has sought to limit the extent of reductions under § 1B1.10, that guideline is only advisory under *United States v. Booker*, 543 U.S. 220 (2005). Once the Sentencing Commission makes a guideline retroactively applicable, a court may reduce the term of imprisonment. The amount of reduction is governed by 18 U.S.C. § 3553(a), not the guidelines. *United States v. Booker,* 543 U.S. 220 (2005*); United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007).

An analysis of how *Booker's* tinkering with 18 U.S.C. § 3553(b) affected the weight a court must give the guidelines under 18 U.S.C. § 3553(a)(4) shows how *Booker* altered the application of 18 U.S.C. § 3582(c) - the sentence reduction statute. A similar analysis of the Commission's enabling legislation shows why the Commission's attempt to limit the extent of a reduction is contrary to the purposes of sentencing. In addition, post-*Booker* developments in the construction of other sentence reduction provisions, including 18 U.S.C § 3553(e), § 3553(f), and Rule 35(b), show that *Booker* extends to motions to reduce sentence under 18 U.S.C. § 3582(c).

    **I.**      **18 U.S.C. § 3582 Must Be Read in Light of *Booker* and *In Pari Materia* With Related Sentencing Provisions. When So Read, § 3582 Gives this Court Authority to Determine the Extent of a Sentence Reduction.**

Section 3582(c)(2) of Title 18 defines the scope of this Court's authority to reduce a sentence. That section provides:

> In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant, the director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Section 3582 must be construed in light of existing case law and *in pari materia* with other sentencing provisions that *Booker* fundamentally altered, particularly 18 U.S.C. § 3553(a). Section 3582 requires that a court consider the § 3553(a) factors in reducing a term of imprisonment. The Commission, through U.S.S.G. § 1B1.10, has sought to severely constrain a court's authority to consider the 3553(a) factors by placing limits on the extent of a reduction. *See* U.S.S.G. § 1B1.10 (limiting reduction to "the minimum of the amended guideline range," or a comparably lesser reduction from the amended guideline range in cases where the original sentence was lower than the original guideline range). In adopting § 1B1.10, the Commission ignored the Supreme Court's decision in *Booker*. *Booker* marked a sea change in federal sentencing, transforming it into a discretionary system with advisory guidelines. Yet, the Commission chose to treat § 1B1.10 as an unchanged island - the sole survivor of the pre-*Booker* mandatory regime.

The Commission failed to consider how *Booker* fundamentally altered § 3553(a), by excising from the statute § 3553(b), and how that alteration affects the reading of § 3582. A closer look at the language of §§ 3582, 3553 and *Booker* shows why the defendant's reading of § 3582 gives meaning to every word in the statute and preserves Congressional intent while also giving effect to

2

*Booker*.

Section 3582 contains a multi-step analysis. First, the Court must ask if the defendant was "sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission, pursuant to 28 U.S.C. § 994(o)" (giving the Commission authority to revisit guidelines). Second, the Court must ask if a reduction is consistent with applicable policy statements issued by the Sentencing Commission. This question traditionally asked whether the Commission made the amendment retroactive. *See United States v. McHan*, 386 F.3d 620, 622 (4th Cir. 2004 ). If the answer to the first two questions is yes, the door to a sentence reduction is opened. The Court may then reduce the sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c).

It is this last provision that *Booker* fundamentally altered. Before *Booker*, many of the § 3553(a) factors were "not applicable" because § 3553(b) made the guidelines - factor 3553(a)(4) - the controlling factor.[1] *Booker*, however, excised 3553(b) from the statute. 543 U.S. at 223-24. Hence, post-*Booker*, with § 3553(b) excised, all of the 3553(a) factors are applicable and the Court is not bound to apply only factor 3553(a)(4) and follow the guidelines. *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007) ("[t]he statute, as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing"). Hence, when § 3582 is read *in pari materia* with the post-*Booker* reconstruction of §§ 3553(b) and 3553(a), the Court must consider the guidelines as a

---

[1] *Booker* explains the interplay of the two provisions as follows: "While subsection a) of § 3553 of the sentencing statute lists the Sentencing Guidelines as one factor to be considered in imposing a sentence, subsection b) directs that the court "shall impose a sentence of the kind, and within the range" established by the Guidelines, subject to departures in specific, limited cases." *Booker*, 543 U.S. at 234.

§ 3553(a)(4) factor, but must also consider all of the other 3553(a) factors in deciding the extent of a sentence reduction. *Virginia Inter. Inc. v. Edwards*, 398 F.3d 313, 317 (4th Cir. 2005) (neighboring statutory subsections that refer to the same subject matter "must be read ... as if they were a single statute").

The Court's holding in *Booker* does not preserve § 3582 as the "sole survivor" of the mandatory guideline regime. When the Court excised § 3553(b)(1) from the statute, along with 18 U.S.C. § 3742(e), it did not carve out exceptions for any provision of the Sentencing Reform Act. The Court unequivocally stated: "So modified, the federal sentencing statute, *see* Sentencing Reform Act of 1984 (Sentencing Act), as amended, **18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq.*,** makes the Guidelines effectively advisory." 543 U.S. at 245. (emphasis added). 18 U.S.C. § 3582 - part of the "*et seq.*" to § 3551 - and 28 U.S.C. § 994(u) - part of the "*et seq.*" to § 991 - plainly fall within the reach of *Booker's* holding. Hence, in considering the § 3553(a) factors when deciding the extent of a sentence reduction under 18 U.S.C. § 3582, the Court must consider the guidelines, but is not bound by them.

II.     **28 U.S.C. § 994(u), Which Originally Gave the Commission the Authority to Specify the Amount of a Sentence Reduction, Must be Read in Light of *Booker* and *In Pari Materia* with Other Provisions in the Enabling Legislation.**

The Commission's enabling legislation, which granted it the authority to "specify in what circumstances and by what amount" sentences should be reduced, 28 U.S.C. § 994(u), does not limit this Court's discretion to determine the extent of a sentence reduction.[2] As more fully discussed above, § 994(u) was not exempted from *Booker's* sweeping holding. In addition, the Commission's

---

[2] The Commission's enabling legislation is directed to the Commission, not the Court. *See United States v. Sanchez*, 517 F.3d 651 (2d Cir. 2008).

4

enabling legislation contains directives that the Commission failed to follow in adopting U.S.S.G. § 1B1.10 and seeking to set limits on the amount of a reduction under § 3582.

Congress directed that the "Commission . . . consistent with all pertinent provisions of any Federal statute **shall promulgate . . . general policy statements [that] would further the purposes of sentencing set forth in section 3553(a)(2)** . . . including the appropriate use of . . . the sentence modification provisions set forth in section[] 3582(c)." 28 U.S.C. § 994(a)(2)(C) (emphasis added). Section 1B1.10 does not "further the purposes of sentencing set forth in section 3553(a)(2)."

First, § 1B1.10 cannot be said, for all cases, to "further the purposes of sentencing set forth in section 3553(a)(2)" because the Commission itself has acknowledged that the crack amendments, made retroactive through § 1B1.10, are only a "partial remedy" to the crack/cocaine disparity. *Kimbrough*, 128 S.Ct. at 569 (citing United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 8 (May 2007)) (available at http://www.ussc.gov/r_congress/cocaine2007.pdf). Thus, even though the Commission itself has acknowledged that greater reductions in sentence may be in order even to correct the crack/cocaine disparity, it has sought to limit a court's ability to more fully correct that disparity in a § 3582 proceeding.

Second, the Commission arbitrarily placed limits on the extent of the reduction, and the kind of information a court should consider in deciding to grant a reduction. The Commission's limits on a court's ability to further the purposes of sentencing work one way - in favor of the government. For example, application note 1(B) expressly seeks to limit a court's consideration of many of the § 3553(a)(2) factors through limits and prohibitions placed on the extent of the reduction. Application notes 1(B)(ii) and (iii), allow the Court to consider only "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term

of imprisonment," and "post-sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment." Both of these things, however, can only be considered in determining whether "a reduction is warranted" in the first place and "the extent of such a reduction … within" the amended guideline range.

The application notes leave no room for a court to give a sentence below the amended guideline range (or less than whatever reduction is comparable to one given at the original sentencing), that "further[s] the [other] purposes of sentencing set forth in section 3553(a)(2)," such as "the need to promote respect for the law," "provide just punishment," or provide the defendant with training, medical care, or treatment "in the most effective manner."

In sum, § 1B1.10 does not accord with the Commission's statutory duties and purpose as set out in 28 U.S.C. § 994(a)(2)(C). Although the Commission has the authority to promulgate policy statements - without consulting experts, without notice and public comment, and without congressional review - that authority must be exercised in accordance with the Commission's statutory duties and the purposes of sentencing. When the Commission fails to properly exercise its authority, as it failed to do in promulgating § 1B1.10, the Court is free to reject it.

Considering the guidelines along with all of the other § 3553(a) factors when entertaining a motion for reduction of sentence, but not treating the guidelines as mandatory, "remains consistent with Congress' initial and basic sentencing intent. . . . [  ] to 'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities ... [and] maintaining sufficient flexibility to permit individualized sentences when warranted.' 28 U.S.C. § 991(b)(1)(B)." *Booker*, 543 U.S. at 264.

### III.   *Booker* Applies to All the Guidelines, Including U.S.S.G. § 1B1.10, Even Though § 1B1.10 is a Sentence Reduction Provision that May Carry No Sixth Amendment Implications.

*Booker* applies to § 1B1.10 even though it is a sentence reduction provision that may carry no Sixth Amendment implications. *Booker* made clear its applicability to all sentencing decisions, including sentencing reductions. The developing case law and changes in Federal Rule of Criminal Procedure 35(b) demonstrate this common understanding of *Booker*.

*The Guidelines are not One-Way Levers That Remain Mandatory in Some Instances*. *Booker* made clear that the guidelines are now advisory even if they do not implicate the Sixth Amendment. In *Booker*, the government argued that the guidelines could remain mandatory in cases that did not implicate judicial fact-finding to increase a defendant's sentence. The Court expressly rejected that argument.

> [W]e do not see how it is possible to leave the Guidelines as binding in other cases. For one thing, the Government's proposal would impose mandatory Guidelines-type limits upon a judge's ability to reduce sentences, but it would not impose those limits upon a judge's ability to increase sentences. We do not believe that such one-way levers are compatible with Congress' intent. For another, we believe that Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others, given the administrative complexities that such a system would create.[3]

543 U.S. at 266 (internal punctuation marks and citation omitted) (emphasis in original). *See also id. at 248* ("we cannot assume that Congress, if faced with the statute's invalidity in key applications,

---

[3] Not applying *Booker* to § 1B1.10 raises some interesting procedural conundrums for appellate jurisdiction. For example, if *Booker* does not apply to § 1B1.10, then neither the government nor the defendant may have an appellate remedy in this case because the appellate review provisions of 18 U.S.C. § 3742(e) have been excised, but not replaced by the standard of review delineated in *Booker*. *See United States v. Legree*, 205 F.3d 724, 727 (4th Cir. 2000) (18 U.S.C. § 3742(a) provides appellate court jurisdiction over appeal of 3582 motion).

would have preferred to apply the statute in as many other instances as possible"). *See also Kimbrough*, 128 S.Ct. at 564 ("under *Booker*, the cocaine Guidelines, *like all other Guidelines*, are advisory only, and that the Court of Appeals erred in holding the crack/powder disparity effectively mandatory").

*Developing Case law Applies Booker to Sentence Reduction Statutes*. A finding that § 1B1.10 is advisory would be consistent with other cases that have used the *Booker* rationale to render the guidelines advisory in other contexts involving sentence reductions with no Sixth Amendment implications. Chief among these cases is *United States v. Hicks*, 472 F.3d 1167, 1172-73 (9th Cir. 2007). In *Hicks*, the court held that district courts may "depart from the Guidelines when issuing new sentences under § 3582(c)(2)," acknowledging that " 'a mandatory system is no longer an open choice.'" *Id.* at 1170 (citing *Booker v. United States*, 543 U.S. 220, 263 (2005)). Other courts are in accord in direct holdings and dicta. *See United States v. Forty Estremera*, 498 F.Supp.2d 468, 471-72 (D.P.R. 2007) (proper procedure in a post-*Booker* § 3582(c)(2) resentencing is to first calculate the amended guideline range and then "evaluate the factors set forth in 18 U.S.C. § 3553(a) to determine whether or not a guideline or non-guideline sentence is warranted"); *United States v. Jones*, 2007 WL 2703122 (D. Kan. Sept. 17, 2007) ("section 3582(c) can be invoked to grant the court the authority to resentence using the guidelines as advisory").

Other cases, construing statutes that permit the sentencing court to go below a statutory mandatory minimum, also find that *Booker* makes the guidelines advisory even if those statutes originally intended to make the guidelines mandatory. For example, in *United States v. Allen*, 450 F.3d 565, 570 n.5 (4th Cir. 2006), the Fourth Circuit construed 18 U.S.C. § 3553(e) - a statute comparable to § 3582. Section 3553(e) permits a court to depart below a mandatory minimum

8

sentence upon a government motion based upon the defendant's substantial assistance. The statute

provides in relevant part:

> Such sentence shall be imposed in accordance with the guidelines and
> policy statements issued by the Sentencing Commission pursuant to
> section 994 of title 28, United States Code.

18 U.S.C. § 3553(e). Notwithstanding this mandatory language, and *Booker's* focus on 18 U.S.C.

§ 3553(a), not § (e), the Fourth Circuit, post-*Booker*, has recognized that a court under § 3553(e) may

give full consideration to the § 3553(a) factors and is not bound by the guidelines in imposing a

sentence below the mandatory minimum. *See also United States v. Mankins*, 2007 WL 2319817 (D.

Md. 2007) (J. Bennett) (reference in § 3553(e) to imposition of sentence "in accordance with the

sentencing guidelines necessarily addresses the advisory nature of those guidelines" after *Booker*).[4]

   All of these cases show that once the gate to a sentence below the mandatory minimum opens

upon government motion, a court is free to exercise its discretion in imposing a sentence. It should

look to the guidelines for guidance, but is not bound by them. A similar result should occur here.

Once the gate to a reduced sentence opens upon the Commission's retroactive application of a

lowered guideline, the Court must consult the guidelines in deciding the extent of any reduction, but

---

   [4] Other cases, construing § 3553(e), or the safety-valve provision at 18 U.S.C. § 3553(f)
are in accord. *See e.g., United States v. Villa-Lopez,* 2008 WL 168667 (9th Cir. 2008) (unpub.)
("Following *United States v. Booker*, 543 U.S. 220 (2005), when a defendant qualifies for the
safety valve, the district court is statutorily required to apply the Guidelines in an advisory
manner along with the other factors contained in 18 U.S.C. § 3553(a)); *United States v. Bolano*,
409 F.3d 1045, 1047 (8th Cir. 2005) (same); *United States v. Boyd*, 496 F. Supp. 2d 977, 980 (D.
Ark. 2007) (government agreed with defendant "that the Guidelines are advisory in the safety
valve setting, just as they are in all other sentencing settings, and that the safety valve provision
does not mandate a sentence within the [guidelines] range;" court held that eligible defendant can
be sentenced below the advisory guideline range that is "sufficient but not greater than necessary
to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2)"); *United States v. Cherry,* 366
F. Supp.2d 372, 376 (E.D. Va. 2005) (same).

is not bound by them.  Once the gate to a reduced sentence opens under § 3582, the Court is bound

only by the "overarching provision" in 18 U.S.C. § 3553(a), *i.e.*, that the Court "'impose a sentence

sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 128

S.Ct. at 568-69.

    *The Judicial Conference of the United States has Recognized that Booker Applies to Post-*

*Sentencing Proceedings to Reduce a Sentence*.  A finding that section 1B1.10 is advisory would be

consistent with current Rule 35(b) - a post-sentencing reduction provision. The Judicial Conference's

Advisory Committee on Criminal Rules acknowledged that *Booker* made the guidelines advisory in

the context of a post-sentencing motion for reduction of sentence under Rule 35(b) of the Federal

Rules of Criminal Procedure.

    The current version of Rule 35 (b), effective December 1, 2007, provides:

> Upon the government's motion made within one year of sentencing,
> the court may reduce a sentence if the defendant, after sentencing,
> provided substantial assistance in investigating or prosecuting another
> person.

Fed. R. Crim. P. 35(b)(1).  Before the December 1st amendment, Rule 35(b) provided that the Court

could reduce a sentence after the defendant provided substantial assistance if "reducing the sentence

accord[ed] with the Sentencing Commission's guidelines and policy statements."  The 2007

amendment eliminated this language.

    The Advisory Committee Notes to the 2007 revision explain the purpose of the amendment:

> The amendment conforms Rule 35(b)(1) to the Supreme Court's
> decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160
> L.Ed.2d 621 (2005).  In *Booker*, the Court held that the provision of
> the federal sentencing statute that makes the Guidelines mandatory,
> 18 U.S.C. § 3553(b)(1), violates the Sixth Amendment right to jury
> trial.  With this provision severed and excised, the Court held, the

Sentencing Reform Act "makes the Guidelines effectively advisory," and requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004). *Id.* at 245-46, 125 S.Ct. 738. Subdivision (b)(1)(B) has been deleted because it treats the guidelines as mandatory.

Fed. R. Crim. P. 35 advisory committee's notes (2007 amendments).

The Committee decided to conform Rule 35 to *Booker* after a subcommittee of the Advisory Committee on Criminal Rules reviewed whether the Court's decision in *Booker* required any amendments to the rules. Minutes of the Advisory Committee on Federal Rules of Criminal Procedure, April 4 & 5, 2008. The subcommittee believed that "strong arguments existed for amending," Rule 35, because the requirement that any reduction in sentence be in accordance with the guidelines "assume[s] that the sentencing guidelines are mandatory - a principle rejected the Supreme Court in *Booker*." *Id.*

The Advisory Committee approved, without objection, the *Booker* conforming amendments to Rule 35 notwithstanding the Sentencing Commission's request that the Committee "preserve[] the existing rule's explicit reference to the Sentencing Guidelines and questioned whether the *Booker* remedial opinion applied to post-sentencing proceedings." Minutes of the Advisory Committee on Criminal Rules, April 3 & 4, 2006.[5]

The history of the amendment to Rule 35 is instructive here for a number of reasons. Even though the Judicial Conference of the United States, through its advisory committee, carefully

---

[5] Also noteworthy is the absence of any objection by the Department of Justice to the Committee's view that the sentence reduction provision of Rule 35 should be amended to conform with *Booker*. Indeed, after extensive notice and comment procedures, the Sentencing Commission apparently voiced the sole dissent to the Committee's proposal to conform Rule 35 to *Booker*.

11

reviewed *Booker's* affects on the sentence reduction provisions of Rule 35(b), and even though the Judicial Conference rejected the Commission's view that *Booker* did not apply to post-sentencing proceedings, the Commission nonetheless promulgated U.S.S.G. § 1B1.10 - claiming that *Booker* does not alter the mandatory nature of the guidelines under 18 U.S.C. § 3582(c).

The Commission's efforts to make the guidelines mandatory in the context of a § 3582 sentencing reduction should be rejected. Rule 35(b) and 18 U.S.C. § 3582(c) both represent limited circumstances under which a court may reduce a final sentence. Because the Judicial Conference read *Booker* as making the guidelines advisory in the context of a motion for reduction of sentence under Rule 35(b), it would promote uniformity in *Booker's* application for this Court to conform § 3582 to *Booker* and read the language "consistent with applicable policy statements" as referring to advisory, not mandatory guidelines.

Just as the Supreme Court in *Booker* sought to preserve the Congressional intent behind the Sentencing Reform Act, this Court should preserve that intent, while recognizing the very real changes brought by *Booker*. The best way to do that is preserve Congress's intent to vest the Commission with the authority to determine when a guideline should be made retroactive, and thus trigger the Court's authority to reduce a sentence under 18 U.S.C.§ 3582, but permit the Court to determine the extent of any reduction through application of *Booker*.[6]

---

[6] That Congress has not amended 18 U.S.C. § 3582 to conform to *Booker*, but remained silent on the 2007 Rule 35(b) amendment, does not reflect a Congressional intent to leave the guidelines mandatory in the context of section 3582 motions. After *Booker*, Congress heeded the advice of many lawyers, academics, and organizations, and made no legislative response to *Booker*, choosing instead to "wait and see" how *Booker* played out in the Courts. Hence, Congress has left intact all of the Sentencing Reform Act, even those provisions *Booker* expressly excised.

IV.    **Many of the 3553(a) Factors Show That a 97 Month Sentence is "Sufficient, But not Greater than Necessary" to Accomplish the Goals of Sentencing**.

1. *The nature and circumstances of the offense and history and characteristics of the defendant.*

Mr. Tracey's case is unremarkable. He was arrested after selling an undercover agent similar three ounce quantities of crack cocaine - suitable for street resale. At best, he was one level up from the bottom tier of street drug distribution. *See Kimbrough v. United States*, __U.S.__, 128 S. Ct. 558, 574 (2007) (describing as "unremarkable" a crack case in which the defendant was caught sitting in a car with some crack cocaine and a firearm).

2. *The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The need to avoid unwarranted disparity*. The amended crack guidelines overstate the seriousness of crack offenses in many cases, such as the defendant's. Both the Sentencing Commission and the Supreme Court in *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007), have acknowledged that the crack/powder disparity in the guidelines is deeply flawed. *Id.* at 568 (citing Commission's conclusion in its 2002 report that the disparity "fails to meet the sentencing objectives" of the Sentencing Reform Act). The crack amendments, while a step in the right direction, represents only a "modest" change that still yields higher sentences for crack offenses than for powder offenses. *Id.* at 573. The recent amendments are "only . . . a partial remedy" for overly harsh crack sentences, and create crack to powder ratios that vary from 25 to 1 for some defendants to 80 to 1 for others. *Id.* at 569.

After *Kimbrough*, this Court may remedy the disparity. In *Kimbrough*, the Court held that "under *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only, and that the

13

district court erred in holding the crack/powder disparity mandatory." *Id.* at 564.  Consequently, the

Court is free to "conclude . . . that the crack/powder disparity yields a sentence 'greater than

necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.* at 563.  Because the

amended guidelines still result in a sentence that is based on an unwarranted disparity and fails to

serve the purposes of sentencing, this Court would be well within its discretion to impose a lower

sentence in this case.

3. *The need to protect the public from further crimes of the defendant.*  An additional period

of incarceration is not necessary to protect the public from Mr. Tracey.  Mr. Tracey has proven

himself a model inmate who has received just one incident report in six years of incarceration - and

that for "being untidy."  Exhibit A.  He has presented no management or disciplinary problems.  In

addition, Mr. Tracey will soon turn 42 - an age when recidivism dramatically declines.

4. *The need to provide the defendant with needed education or vocational training, medical*

*care, or other correctional treatment in the most effective manner*.  Since being incarcerated, Mr.

Tracey has worked steadily.  He "consistently receives outstanding work performance evaluations

and is considered a hard worker." Exhibit A.  He worked for two years as a GED tutor at Ft. Dix and

five months as a literacy tutor at Devens Federal Medical Center.  Exhibit A.  He currently works

as an orderly at the hospital.  Exhibit A.

In addition to helping other inmates obtain their GED or learn to read and write, Mr. Tracey

has furthered his own education by taking a variety of courses, including parenting, personal finance,

entrepreneurial training, real estate, cinematic history, anatomy, and computer training.  Exhibit B.

Mr. Tracey faces deportation proceedings upon his release from Bureau of Prisons custody.

He looks forward to putting the past behind hin and establishing a solid foundation in his home

14

country of Jamaica where he can receive visits - without bars - from his adult children and other family members.

## Conclusion

Mr. Tracey requests that this Honorable Court reduce his sentence to 97 months imprisonment pursuant to its authority under 18 U.S.C. § 3582(c) and *Booker*.

Respectfully submitted,

_____
Denise C. Barrett        #06734
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street,
Suite 1100, Tower II
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email: denise_barrett@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _9th_ day of May 2008, a copy of the foregoing

Memorandum of Law in Support of Relief Under 18 U.S.C. § 3582 was delivered via inter-office

mail to Barbara Sale, AUSA, United States Attorney's Office, 36 South Charles Street, 4th Floor,

Baltimore, Maryland 21201, and Estelle Santana, USPO, 250 West Pratt Street, Suite 400,

Baltimore, Maryland.


_____

Denise C. Barrett
Assistant Federal Public Defender

16